UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WALTER BRANCH,

                Plaintiff,

    – against –

ANTHONY J. ANNUCCI, NA-KIA WALTON, JASON GIBSON, and HEIDI LEWIS,

                Defendants.

**OPINION & ORDER**

20 Civ. 7968 (ER) (SN)

RAMOS, D.J.:

    Walter Branch filed this pro se action alleging that Defendants failed to provide reasonable accommodations for his hearing impairment while he was incarcerated at Eastern Correctional Facility in Napanoch, New York. Doc. 2. The Court previously denied Defendants' motion to dismiss the claims and instead construed the complaint as a contempt motion under the Consent Decree in *Clarkson v. Goord*, 91 Civ. 1792 (CM). Doc. 34. Defendants ask the Court to deny Branch's contempt motion and dismiss this action. Doc. 39. For the reasons set forth below, Branch's contempt motion is DENIED.

**I. BACKGROUND**

    **A. The *Clarkson* Consent Decree**

    In March 1991, the *Clarkson* class action "was brought on behalf of all present and future deaf and hard-of-hearing inmates in the custody of" the New York State Department of Corrections and Community Supervision (DOCCS). *Smith v. Masterson*, No. 05 Civ. 2897 (RWS), 2006 WL 2883009, at *1 (S.D.N.Y. Sept. 29, 2006). Several years later, in June 1996, the parties entered into a consent order and judgment, which was approved by Judge Sweet. *Id.* at *2.

    The *Clarkson* Consent Decree "provides a wide range of relief to correct violations of hearing-impaired inmates' federal right[s]." *Figueroa v. Dean*, 425 F. Supp. 2d 448, 450 (S.D.N.Y. 2006). Among other things, the Consent Decree "requires

DOC[C]S to provide deaf and hard-of-hearing inmates with 'the auxiliary aids, services and assistive devices necessary to facilitate full and effective participation in prison programs, activities and services.'" *Id.*; *see* Doc. 42-1 ("Consent Decree") ¶ 20.  DOCCS must also provide reasonable accommodations "whenever a deaf or hard of hearing inmate is a party or witness at any stage of any administrative, grievance, or disciplinary proceeding."  Consent Decree ¶ 21.  Many of the Consent Decree's requirements "have been incorporated into the published policies of DOC[C]S." *Figueroa*, 425 F. Supp. 2d at 451.  DOCCS Directive No. 2612 "addresses, *inter alia*, the needs of hearing-impaired inmates and tracks much of the language of the Consent Decree." *Id.*

### B. Branch's Complaint

Branch filed this action while incarcerated at Eastern Correctional.  Doc. 2 at 2.  He is "severely hearing impaired." *Id.* at 4; *see also* Doc. 40 ¶¶ 8–9 (stating that Directive 2612 defines "hard of hearing" inmates as having HL-20 hearing levels and that Branch "was diagnosed as HL-20 by medical staff").  The defendants named in Branch's complaint are (1) DOCCS Acting Commissioner Anthony Annucci; (2) former DOCCS ADA Coordinator Na-Kia Walton; (3) DOCCS Translator Jason Gibson; and (4) DOCCS Instructor Heidi Lewis.  Doc. 2 at 3; *see* Doc. 39 at 1.

Branch alleges that he was "assaulted by several security personnel" at Wyoming Correctional Facility in Attica, New York, in October 2019.  Doc. 2 at 5.  That incident, according to the complaint, hospitalized Branch and ultimately resulted in his transfer to Eastern Correctional. *Id.*

At Eastern Correctional, Branch allegedly was subjected to numerous disciplinary actions in violation of the Consent Decree and Directive 2612. *Id.* at 4.  He asserts that Gibson and Lewis—employees of Annucci—refused to provide him reasonable accommodations in the form of headphones and "other necessary items." *Id.* Branch claims that their actions violated the Consent Decree and Directive 2612. *Id.* In addition, Branch alleges that Walton—another employee of Annucci—failed to investigate his

complaints about "the conditions sensorially disabled inmates are subjected to." *Id.* at 4–5. Nor did Walton make any effort to ensure that the Consent Decree and Directive 2612 were enforced. *Id.* at 5.

Branch seeks several forms of relief. First, he requests that all his disciplinary records be expunged if Defendants "cannot establish that [Branch] was provided with alternate means of communication before and during any disciplinary proceeding." *Id.* He also seeks the return of "all surcharge money connected with said disciplinary actions." *Id.* Second, Branch asks that he be provided with "all requested accommodations available at Eastern Correctional Facility and any other facility he might be sent to." *Id.* at 5–6. Third, he requests compensation for "the full cost of this action to be paid to the Court." *Id.* at 6. Finally, Branch seeks compensation of $10 for each day that he was confined on each disciplinary action. *Id.*

### C. Procedural History

Branch filed this pro se action on September 25, 2020. Doc. 2. Defendants moved to dismiss the complaint on multiple grounds. Doc. 27. They also stated that Branch had been transferred from Eastern Correctional to Coxsackie Correctional Facility in January 2021. Doc. 28 at 1, 4. Branch did not respond to Defendants' motion despite a warning that failure to do so would result in the Court treating the motion as unopposed. *See* Doc. 33. The Court denied the motion to dismiss and construed Branch's complaint as a contempt motion under the Consent Decree. Doc. 34; *see Branch v. Annucci*, No. 20 Civ. 7968 (ER) (SN), 2022 WL 596068 (S.D.N.Y. Feb. 28, 2022).

The Court granted Defendants' request to submit another brief responding to the contempt motion. *Branch*, 2022 WL 596068, at *4. Defendants filed that brief on May 11, 2022, along with three supporting declarations. Docs. 39–42. Branch did not file a reply despite being reminded to do so. *See* Doc. 45 (extending reply deadline to July 1, 2022, and stating that no further extensions would be granted).

3

On July 7, 2023, Defendants submitted a letter stating that, according to the DOCCS website, Branch was released on parole in August 2022, but he failed to update his mailing address with the Clerk of Court. Doc. 46. Defendants asked the Court to deem the motion fully submitted, *id.*, and the Court will do so.

## II. LEGAL STANDARD

The purpose of a civil contempt order "is to compel a reluctant party to do what was ordered of her." *Clarkson v. Goord*, No. 91 Civ. 1792 (RWS), 2014 WL 4290699, at *3 (S.D.N.Y. Aug. 29, 2014) (citation omitted). Such an order is "a severe sanction subject to a higher standard of proof than the 'preponderance of the evidence' standard applicable to ordinary cases." *Id.* (citation omitted). A plaintiff "must prove a civil contempt with clear and convincing evidence." *Id.* Courts should exercise their power to hold a party in civil contempt only where "(1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply." *Id.*

## III. DISCUSSION

To the extent Branch seeks equitable relief—in the form of "all requested accommodations available at Eastern Correctional Facility and any other facility he might be sent to," Doc. 2 at 5–6—his claims are moot. "The rule in the Second Circuit is that 'an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials in that facility.'" *Clarkson v. Goord*, No. 91 Civ. 1792 (CM), 2020 WL 1941873, at *2 (S.D.N.Y. Apr. 22, 2020) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Branch is no longer incarcerated at Eastern Correctional or, to the Court's knowledge, at any other facility. *See* Doc. 46 (noting that the DOCCS website indicates that Branch was released on parole in August 2022). Accordingly, Branch's claims for equitable relief are denied as moot.

To the extent Branch requests damages or other relief related to his disciplinary proceedings, Doc. 2 at 5–6, those claims are denied as well. While Branch alleges that his disciplinary proceedings violated the Consent Decree, there is no "clear and convincing" evidence in the record to support that contention. Defendants have submitted a declaration from Tonia Wheeler, the DOCCS ADA Coordinator (a position formerly held by defendant Walton). Doc. 40 ¶ 1. Wheeler's declaration explains that Branch was involved in over thirty disciplinary proceedings at several facilities during his incarceration. *Id.* ¶ 11. The declaration also states that DOCCS is not able to investigate each one of these hearings to determine whether accommodations were requested or provided. *Id.* Branch did file multiple complaints that "appear to complain about" *Clarkson* issues while he was incarcerated at Eastern Correctional, but none of those complaints referenced accommodations not being provided at disciplinary hearings.[1] *Id.* ¶¶ 12–13; *see also* Doc. 41 ¶ 9 (declaration from defendant Gibson stating that "[a]t no time did Mr. Branch ever complain to me that he was not being provided requested reasonable accommodations in connection with his HL-20 status during any disciplinary hearings"). The Court agrees with Defendants that there is no clear and convincing evidence in the record to demonstrate that they violated the Consent Decree in connection with Branch's disciplinary proceedings. *Cf. Clarkson v. Goord*, 2014 WL 4290699, at *6 (finding that plaintiff had not established clear and convincing evidence of a violation where allegations lacked detail and failed to explain how the Consent Decree had been violated).

---

[1] According to Wheeler's declaration, Branch submitted grievances and letters—unconnected to disciplinary proceedings—complaining that he was not provided headphones (free of charge) in his housing area or recreation area. Doc. 40 ¶¶ 15–17. Defendant Walton, the ADA Coordinator at the time, informed Branch that headphones were available for purchase. *Id.* ¶ 18. DOCCS staff apparently misinterpreted Directive 2612 "as stating that headphones are allowed reasonable accommodations outside the SHU [Special Housing Unit], but the incarcerated individual must purchase them." *Id.* ¶ 20. Wheeler states that this interpretation "was incorrect" and that "headphones are to be issued free of charge to HL-20 inmates outside the SHU when they are requested as reasonable accommodations." *Id.* DOCCS subsequently provided Branch with headphones. Doc. 44.

5

## IV. CONCLUSION

For the foregoing reasons, Branch's contempt motion is DENIED. The Clerk of Court is respectfully directed to close the case.

It is SO ORDERED.

Dated: May 7, 2024
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.